**In re CITY COMMUNICATIONS, LTD., Debtor.**

**Thomas Paty STAMPS, Trustee, Plaintiff,**

**v.**

**Carl W. KNOBLOCH, Jr., Dudley L. Moore, Jr., and Citinet, Inc., Defendants.**

**No. 85–05915. Adv. No. 87–0625A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 11, 1989.

Thomas Paty Stamps, Atlanta, Ga., Trustee.

### ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This matter is before the court on the motion for summary judgment filed June 9, 1988 by Defendants Moore and Knobloch (hereinafter "Defendants"). The Trustee filed his response July 29, 1988. Defendants filed their reply September 2, 1988. The Trustee filed affidavits in opposition to the Defendants' motion for summary judgment October 28, 1988. Defendants filed a supplemental brief December 13, 1988. The Trustee filed a response February 8, 1989. Defendants filed their reply March 6, 1989.

## STATEMENT OF FACTS

Defendants Moore and Knobloch are directors and the sole shareholders of Citinet, Inc. (hereinafter "Citinet"), which was formed May 2, 1983.[1] On May 24, 1983, Citinet became the sole general partner of Debtor, City Communications, Ltd., a Georgia limited partnership. Citinet also purchased limited partnership units of Debtor. All funds of Citinet were transferred to Debtor.

Debtor was formed for the purpose of publishing *Goodlife*, a controlled distribution magazine. Debtor was funded in part by the sale of limited partnership units through private offerings and in part by loans made by Defendants to Citinet, which were contributed to Debtor, and by loans by Defendants directly to Debtor. In November and December 1984 and August 1985, Defendants converted those loans into limited partnership units in Debtor.

Citinet was apparently formed for the sole purpose of becoming Debtor's general partner. Citinet had no employees. Citinet owned no real property and no personal property apart from its investment in Debtor. Citinet had no capital reserves and no assets apart from its investment in Debtor.

In the complaint, the Trustee asserts, pursuant to 11 U.S.C. § 723(a), that Citinet is liable as general partner for the deficiency in the property of Debtor's estate to pay in full all allowed claims against Debtor. The Trustee also asserts Defendants are jointly and severally liable for the claims against Debtor as general partners of Debtor because they are alter egos of Citinet and, in the alternative, because they, as limited partners of Debtor, exercised control over Debtor sufficient to impose liability as general partners.

Defendants contend they are entitled to summary judgment against the Trustee on the following grounds: (1) the Trustee lacks standing to assert claims against the Defendants as alter egos of the general partner of Debtor or as general partners of Debtor pursuant to the Revised Uniform Limited Partnership Act; and (2) even if the Trustee has standing to assert those claims against Defendants, the undisputed material facts show Defendants are entitled to judgment as a matter of law. The Trustee opposes both contentions of Defendants. The Trustee asserts he has standing under 11 U.S.C. §§ 723, 544 or 541. The Trustee also asserts a disputed issue of material fact exists sufficient to preclude summary judgment in favor of Defendants.

## CONCLUSIONS OF LAW

The Trustee asserts he has an independent ground for standing to pursue his claims against Defendants in 11 U.S.C. § 723(a), which provides:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

As authority for his position, the Trustee cites *Russell, Jarvis, Estabrook & Dashiell v. Kaveney,* 60 B.R. 34 (9th Cir BAP, 1985). That case, however, holds only that a trustee for a Chapter 11 limited partnership has no power to assert a claim against a general partner of the Chapter 11 debtor. Section 723 is available only in Chapter 7 partnership cases. *Id.* at 36. Certainly, therefore, because the instant case is a case under Chapter 7, if the Trustee can establish Defendants are personally liable as general partners of Debtor, the Trustee can proceed under § 723. A threshold issue, however, is whether Defendants are general partners of Debtor. In order to establish that Defendants are general partners of Debtor, the Trustee must have standing under either § 544 or § 541 to assert his claims that Defendants are alter egos of Citinet or became Debtor's general partners as a result of the control they asserted as limited partners.[2]

---

1. Moore owned 82.1% of Citinet's outstanding shares. Knobloch owned 17.9%.

2. The Trustee claims in the alternative that Defendants are liable for the allowed claims against Debtor either as alter egos of Debtor's

The issue of whether the Trustee has standing to assert an alter ego claim is one on which the courts do not agree. Several recent cases illustrate the division of the circuit courts on the issue of the Trustee's standing. In the cases of *Williams v. California First Bank* (*In re Chacklan Enterprises, Inc.*), 859 F.2d 664 (9th Cir.1988) (hereinafter *"Williams"*) and *Mixon v. Anderson* (*In re Ozark Restaurant Equipment Co., Inc.*), 816 F.2d 1222 (8th Cir.1987) (hereinafter *"Ozark"*), the courts held the trustee has no standing. In the cases of *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987) (hereinafter *"Koch"*), *In re SI Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (hereinafter *"SI Acquisition"*) and *St. Paul Fire and Marine Insurance Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir.1989) (hereinafter *"Pepsico"*), the courts held the trustee does have standing to pursue an alter ego claim. Universally, however, the courts have based their decisions on standing on an analysis of § 541, not § 544. The courts agree that § 544 does not provide the trustee with standing to pursue an alter ego claim.[3]

In a United States Supreme Court case, *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S.416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Court held a trustee had no standing to bring an action on behalf of a debtor's bondholders against an indenture trustee. *Caplin* has been read narrowly to mean a trustee lacks standing to pursue personal claims of a debtor's creditors but not general claims. *See, In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808 (Bankr.N.D.Tex.1989); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir.1989); *Green v. Bate Records, Inc.* (*In re 10th Avenue Record Distributors, Inc.*), 97 B.R. 163 (S.D.N.Y.1989). Other courts have read *Caplin* more broadly as precluding standing for a trustee to bring any claim on behalf of creditors. *See, Ozark*, 816 F.2d 1222; *Goldman v. Haverstraw Associates*, 84 B.R. 356 (Bankr.S.D.N.Y.1988); *Williams*, 859 F.2d 664; *Mann v. Michael Industries, Inc.* (*In re Inland Shoe Manufacturing Co., Inc.*), 90 B.R. 981 (Bankr.E. D.Mo.1988).

In *Caplin*, however, the Court invited Congress to overrule its decision legislatively. In 1978, while Congress was considering enactment of the Bankruptcy Code, the draftsmen prepared § 544(c), which was designed to overrule *Caplin:*

(c)(1) The trustee may enforce any cause of action that a creditor, a class of creditors, an equity security holder, or a class of equity security holders has against any person, if—

(A) the trustee could not recover against such person on such cause of action other than under this subsection;

---

corporate general partner or as limited partners of Debtor who became general partners by virtue of their taking control of Debtor. The Trustee also argued in his brief that Defendants could be held liable as de facto general partners pursuant to OCGA § 14–8–16(a). Although all three claims are similar and the analysis with respect to standing will be similar, each of the three claims will be treated separately below.

**3.** Section 544 provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(B) recovery by the trustee for the benefit of such creditor or equity security holder or the members of such class will reduce the claim or interest of such creditor or equity security holder or of such members, as the case may be, against or in the estate;

(C) there is a reasonable likelihood that recovery against such person will not create an allowable claim in favor of such person against the estate; and

(D) enforcement of such cause of action is in the best interest of the estate.

(2) If the trustee brings an action on such cause of action—

(A) the court, after notice and a hearing, may stay the commencement or continuation of any other action on such cause of action; and

(B) the clerk shall give notice to all creditors or equity security holders that could have brought an action on such cause of action if the trust had not done so.

(3) A judgment in any such action brought by the trustee binds all creditors or equity security holders that could have brought an action on such cause of action. Any recovery by the trustee less any expense incurred by the trustee in effecting such recovery, shall be for the benefit only of such creditors or equity security holders.

H.R. 8200, 95th Cong., 1st Sess., 416–17 (1977). The legislative history to the proposed § 544(c) clearly states its purpose was to overrule *Caplin.* H.R.Rep. 95–595, 95th Cong., 1st Sess. 370–71 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. Section 544(c), however was dropped from the final version of the Bankruptcy Code without explanation. The final report stated only, "The House amendment deleted § 544(c) of the House bill." 124 Cong.Rec. S17406 (daily ed. October 6, 1988). The failure to enact § 544(c) leaves §. 544(a) and (b) as means for the trustee only to avoid transfers or obligations, not as a means to assert claims. *Ozark,* 816 F.2d 1222; *Goldman v. Haverstraw Associates,* 84

B.R. 356; *Wayne Film Systems Corp. v. Film Recovery Systems Corp.,* 64 B.R. 45 (N.D.Ill.1986). Therefore, the Trustee's contention that § 544 affords him standing in the instant case is without merit, both as to the corporate alter ego claim and the limited partner/general partner claim.

Only § 541 remains as a basis for the trustee's standing to pursue the alter ego claim against Defendants. As noted above, the circuit courts which have ruled on the issue are split as to whether a trustee has standing under § 541. The Eighth and Ninth Circuits held a trustee lacks standing; the Second, Fifth and Seventh Circuits held a trustee has standing. The Eleventh Circuit has not decided the issue.

In analyzing whether a trustee has standing pursuant to § 541 to pursue an alter ego claim, courts have employed two analyses: (1) whether, under state law, an alter ego claim is a claim which can belong to the corporation; and (2) whether an alter ego claim is a personal claim of an individual or class of creditors or whether it is a general claim available to all creditors. The Fifth, Seventh and Eighth Circuits employed the first analysis with different results.

In the *Ozark* case from the Eighth Circuit, the court found that under Arkansas law, an alter ego claim could not be asserted by the corporation and therefore was not property of the estate. As analyzed by the *Ozark* court, under Arkansas law, the corporate veil could be pierced only if the corporate entity has been abused to the detriment of third parties. Thus, an alter ego claim belonged only to the corporation's creditors, could not, therefore, be property of the estate and could not be asserted by a trustee.

Employing an amalgam of the two analytical processes, the *Koch* court found a trustee does have standing to pursue an alter ego claim. In *Koch,* the court analyzed Illinois and Indiana law.[4] The court concluded that, under the law of either of those states, an alter ego claim "is an equitable, remedial doctrine that may be as-

---

**4.** The issue of which state's law applied was not argued by the parties or decided by the court.

serted by any creditor without regard to the specific nature of his relationship with the corporation and its alleged alter ego." *Koch*, 831 F.2d at 1345. As a result, because it is a general claim of all creditors, the *Koch* court found an alter ego claim is property of the estate and can be asserted by the trustee.

In the *SI Acquisition* case, the Fifth Circuit court analyzed Texas law and reached a conclusion different from that reached by the *Ozark* court. The *SI Acquisition* court found that the Texas alter ego doctrine is based on equitable concerns and not on particular creditors' dealings with or reliance on the alter ego. On that basis, the court concluded that an alter ego claim belonged to the corporate debtor and, therefore, is property of the estate.

■ Georgia law concerning the alter ego doctrine is similar to the state laws analyzed in *Koch* and *SI Acquisition*. The Georgia Supreme Court defined the alter ego doctrine as a disregard by the stockholders of the corporate entity which creates "such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist" so that adherence to the corporate entity ''would promote injustice or protect fraud." *Farmers Warehouse of Pelham, Inc. v. Collins*, 220 Ga. 141, 150, 137 S.E.2d 619 (1964). As with the state laws analyzed in *Koch* and *SI Acquisitions*, the emphasis under Georgia law appears to be equitable concerns rather that the specific relationships between the alter ego and the creditors. The alter ego doctrine focuses on the overall behavior of the corporation and the alleged alter egos as shareholder derivative actions focus on the continuing course of conduct of the corporate officers and directors. Therefore, as in *Koch* and *SI Acquisition*, under Georgia law, an alter ego claim is property of the estate under § 541 and can be asserted by the Trustee.

Analyses like those in *Koch* and *SI Acquisition* have been challenged, however, by legal scholars as tortured and result oriented. *See,* Richard L. Epling, "Trustee's Standing to Sue in Alter Ego or Other Damage Remedy Actions," *Bankr.Devel.J.* 191 (1989). While it is true that alter ego claims are asserted in state courts only by creditors and never by the corporation itself, it should be recognized that state law and bankruptcy law have different motives and policies underlying the development of their equitable remedies. The construction of state law is such that only creditors will pursue an alter ego action because no objective third party, such as a trustee, is generally available to pursue such a claim on behalf of the corporation. The corporation's alter egos, who by definition control the corporation, could hardly be expected to pursue themselves. Additionally, the corporation itself may not have been harmed by the alter ego's control. Therefore, although an alter ego claim asserted by the corporation may not exist under state law and thus may appear to belong only to creditors, within the bankruptcy context, the logical and proper party to pursue such a claim is the trustee.

This principle is recognized in those cases which employ the second analysis described above: whether the claim is the personal claim of an individual or class of creditors or is a general claim common to all the corporation's creditors. If the claim is asserted "for the common community of interests in the corporation—creditors as well as stockholders—" the bankruptcy trustee has standing to pursue it. *In re E.F. Hutton Southwest II, Ltd.,* 103 B.R. 808, 812. Where the alter ego action is an attempt to collect property for the benefit of all creditors and is not personal to any particular creditor, the trustee should have standing to maintain the action. *Green v. Bate Records, Inc.,* 97 B.R. 163.

■ In the instant case, the parties' presentation of the facts which underlie the alter ego claim make it clear that the Trustee is not relying on any injury to a particular creditor or class of creditors. Neither does the Trustee rely on Defendants' course of dealing with a particular creditor or class of creditors. The Trustee relies on Defendants' exertion of control over Debtor and on Defendants' failure to observe any of the corporate formalities in their

dealings with Citinet and Debtor. Additionally, the Trustee does not allege any particular harm to any particular creditor or class of creditors but rather alleges a general harm to all Debtor's creditors and even perhaps to Debtor. Practically, if the Trustee is prevented from asserting the alter ego claims against Defendants, no other party is in a position to do so. "It would be contrary to fundamental bankruptcy policies to prohibit a bankruptcy trustee from asserting an alter ego remedy for the benefit of all creditors." *ANR Limited, Inc. v. Chattin*, 89 B.R. 898 (D.Utah 1988), *citing, Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).[5] Therefore, in the instant case, the Trustee has standing to pursue the alter ego claim against Defendants.

■ The Trustee claims in the alternative that Defendants, as limited partners of Debtor, should be found to be liable as general partners because they exercised control over Debtor's business. The parties cited no case law wherein the issue of standing was addressed in the limited partnership context, nor has the court found any such case. Such a claim is, however, similar to a corporate alter ego claim. Both corporations and limited partnerships are devices employed to limit the personal liability of investors. Doctrines have emerged within the context of both corporate law and limited partnership law which attempt to protect against abuse of those devices by piercing the form and imposing liability. As in the corporate context, in the limited partnership context liability is imposed on a limited partner as a result of a continuing course of conduct. Georgia law provides that:

[a] limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes

part in the control of the business. OCGA § 14–9A–41.[6]

Liability results, not from injury to a particular creditor or class of creditors, but rather from the behavior of a limited partner which is seen as an abuse of the limited partnership device. Thus, the analysis above with respect to a corporate alter ego claim applies, by analogy, to the Trustee's limited partnership claim. As a result, the Trustee has standing to assert Defendants are liable as general partners because, as limited partners, they exercised control of the business.

In his response to Defendants' motion for summary judgment, the Trustee asserts Defendants are also liable as general partners pursuant to OCGA § 14–8–16(a):

When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or communicated to such person, giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

It appears clear that this code section is available only to individual creditors harmed by the representation of a partnership. The latter part of § 14–8–16(a), however, makes clear that a continuing course of conduct can result in liability as a general partner even though no express representation was made to a specific creditor. Thus, as in a corporate alter ego action or a limited partnership action, a claim under § 14–8–16(a) may be available to all credi-

---

**5.** In *Sampsell,* a bankruptcy referee was allowed to pierce the corporate veil of the debtor's sham corporation.

**6.** In 1988, the Georgia General Assembly enacted OCGA § 14–9A–110, *et. seq.* in which an element of creditor reliance was added to the pro-

visions relating to imposition of liability of a general partner. This new act is not, however, applicable in the instant case because it applies only to the limited partnerships formed after the effective date of the act.

tors without respect to reliance by or course of dealing with any particular creditor or class of creditors. Thus, the analysis set forth above is applicable to accord the Trustee standing under § 14–8–16(a).

■ Defendants also contend they are entitled to judgment as a matter of law because the facts are undisputed. Claims such as alter ego claims, however, are very fact specific. *United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686 (5th Cir. 1985). In the instant case, the trustee disputes the facts as set forth by Defendants and disputes the inferences to be drawn from those facts. Where inferences to be drawn from facts are disputed, summary judgment is not appropriate. *Wick v. Tucson Newspaper, Inc.*, 598 F.Supp. 1155 (D.Ariz.1985); *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir.1978).[7] Especially

where the inference to be drawn would rest on the credibility of witnesses, summary judgment is not appropriate. *Id.* In the instant case, the conclusions to be drawn from the facts presented by both parties depend on disputed inferences and on the credibility of witnesses. Therefore, summary judgment is inappropriate. Accordingly, it is hereby

ORDERED that Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

**7.** *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), renders decisions of the Fifth Circuit issued prior to September 30, 1981, binding precedent for the Eleventh Circuit.