In re ADAM FURNITURE INDUSTRIES, INC., Debtor.

Anne R. MOORE, Trustee for Adam Furniture Industries, Inc., a New Jersey corporation, and Adam Furniture Industries, Inc., a Georgia corporation, and Lignacon Holzoberflachen Anlagen and Lacktechnik GmbH, and Sidex International Furniture Corp., Plaintiffs,

v.

Norman KUMER, Mrs. Norman Kumer a/k/a M. Kumer, Irwin Kumer, Mrs. Robert Bono, Estate of Robert Bono, Mrs. Robert Bono as Temporary Administratrix Thereof, Norson's Industries Inc., a Georgia corporation, Furniture Marketing Systems, Inc., a Georgia corporation, and Charles J. Petrics, CPA, Defendants.

Bankruptcy No. 92–60200.
Adv. No. 95–06007A.

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

Jan. 4, 1996.

Louis Saul, Jeffrey M. Butler, Augusta, Georgia, for Lignacon and Sidex International Furniture Corp.

Susan Barrett, Augusta, Georgia, for Norman Kumer a/k/a M. Kumer, Irwin Kumer & Norson's Industries, Inc.

Thomas F. Wamsley, Jr., Christine L. Mast, Freeman & Hawkins, Atlanta, Georgia, for Charles J. Petrics, C.P.A.

Anne Moore, Chapter 7 Trustee, Statesboro, Georgia.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

The Chapter 7 trustee and certain creditors joined to file this adversary proceeding against the above-named defendants to recover allegedly transferred assets. Defendants object to the inclusion of creditors as party plaintiffs, and to the trustee's choice of counsel.

## FACTS

The debtor, Adam Furniture Industries, Inc. ("Adam Furniture") was incorporated in 1983 in the state of New Jersey. The business was reincorporated as a Georgia corporation in early 1991 after moving operations to Swainsboro, Georgia.[1] The principal business of Adam Furniture was the importation and sale of wood veneer office furniture.

The sole shareholder and principal officer of Adam Furniture was Mr. Robert Bono.[2] Related to the debtor through stock ownership are two other entities, Adam, Inc. and Furniture Marketing Systems, Inc. ("Furniture Marketing"), both of whom were formed in early 1991 at the time of incorporation of Adam Furniture, the Georgia corporation. All three entities occupied the same premises in Swainsboro, Georgia. According to prior testimony of Mr. Bono, Adam Furniture was designed to be a warehousing corporation while Furniture Marketing acted as debtor's sales agent operating on a commission basis.

Adam, Inc. controlled personnel for the entire operation. Robert Bono was the president of all three entities. Mr. Bono's widow is the sole shareholder of Adam, Inc. and Furniture Marketing. Mr. Norman Kumer is an officer in Adam Furniture, both the New Jersey and Georgia corporations. Other documents filed with this court also indicate that Mr. Kumer is secretary of Adam Furniture, Furniture Marketing, and Adam, Inc.; however, Mr. Kumer's exact role in management and control of these entities is in dispute.

The underlying Chapter 7 case originated on April 15, 1992 when Lignacon Holzoberflachen Anlagen und Lacktechnik GmbH (hereinafter "Lignacon"), the main supplier and purported largest creditor of Adam Furniture, brought an involuntary bankruptcy petition under Chapter 7 against the debtor. Lignacon was subsequently joined in the petition by three additional creditors, including Sidex International Furniture Corporation (hereinafter "Sidex"), also a party plaintiff in this adversary proceeding. The debtor contested the petition, and after a trial on the issue, I determined that the petition was valid and relief was granted under Chapter 7 on January 21, 1993. On that date, the debtor voluntarily converted the case to a case under Chapter 11. The case was subsequently reconverted to a Chapter 7 case on October 19, 1993.

The present adversary proceeding was filed to recover property allegedly transferred from the debtor, Adam Furniture, to other related entities sharing common ownership, and named principals of those organizations, who are joined as defendants. The complaint alleges four separate theories of recovery: (1) fraudulent transfer of the debtor's assets, (2) preferential transfer of the debtor's assets, (3) post-petition transfer of the debtor's assets, and (4) an alter ego claim.[3] Defendants respond in part by rais-

---

1. Involuntary petitions were brought against Adam Furniture Industries, Inc., a New Jersey corporation and Adam Furniture Industries, Inc., a Georgia corporation. The cases were consolidated on June 1, 1992.

2. Mr. Bono died after the filing of the involuntary case.

3. To establish an alter ego cause of action in Georgia, it must be shown that a stockholder of a corporation so disregards the corporate form that the separate personalities of the corporation

ing a procedural challenge to the inclusion of creditors of the estate, Lignacon and Sidex (creditors instrumental in the prosecution of the involuntary petition), as party plaintiffs. Additionally, defendants contest the application by the Chapter 7 trustee to retain Messrs. Louis Saul and Jeffrey Butler as counsels for the trustee in this matter because of Mr. Saul's ongoing representation of Lignacon, and Mr. Butler's representation of Sidex, both major creditors of the estate. This court has jurisdiction to hear this matter as a core proceeding under 28 U.S.C. § 157(b)(2)(F) & (H).

## I. Lignacon and Sidex as Plaintiffs

▇▇ Although the complaint alleges several alternate theories of recovery, counsel for plaintiffs in brief asserts Lignacon and Sidex filed as party plaintiffs to ensure standing to pursue the alter ego claim against the principals of the debtor corporation. It is well-settled that the other causes of action asserted in the complaint, fraudulent transfers, preferential transfers and post-petition transfers of the debtor's assets, are properly brought by the trustee alone. The Bankruptcy Code provides a singular grant of power to the trustee to institute actions avoiding fraudulent and preferential transfers. *See* 11 U.S.C. § 547(b); 11 U.S.C. § 548(a); 11 U.S.C. § 549(a). The grant of standing to recover preferences in § 547(b) reads, "*the trustee* may avoid any transfer of an interest of the debtor in property...." 11 U.S.C. § 547(b) (emphasis added). Sections 548(a) and 549(a) contain similar language limiting the action to trustees alone. The plain meaning of those statutes is obvious: the Chapter 7 trustee has standing to pursue the action to the exclusion of all other affected parties, including creditors either individually or as a group. *See Lilly v. FDIC (In re Natchez Corp.)*, 953 F.2d 184,

187 (5th Cir.1992) (only trustees and debtors-in-possession have standing to avoid post-petition transfers under § 549); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir.1988) (only trustee has standing to avoid fraudulent transfer under § 548, not creditor); *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 860 (10th Cir.1986) (only trustee has standing to avoid preferential transfer under § 547); *In re Bacher*, 47 B.R. 825, 829 (Bankr.E.D.Pa.1985) (only trustee has standing to avoid fraudulent transfer under § 548, not creditor); *In re Ciavarella*, 28 B.R. 823, 825 (Bankr.S.D.N.Y.1983) (only trustee or debtor-in-possession, not creditor, authorized to invoke § 547 and § 549); *In re Milam*, 37 B.R. 865, 867 (Bankr.N.D.Ga.1984) (trustee has sole exercise of power to pursue actions under §§ 547, 548 and 549). Creditors alleging such causes of action are limited to moving the court to compel the trustee to act in pursuing the claim or in limited circumstances gaining permission of the court to institute the action themselves. *Nebraska State Bank v. Jones*, 846 F.2d 477, 478 (8th Cir.1988).

The trustee's power to institute an alter ego claim is not so well-settled. There appears to be a split among the Circuits as to whether a trustee has standing to institute an alter ego claim on behalf of the estate. *See e.g., St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2nd Cir.1989) (allowing trustee standing to assert alter ego claim); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) (same); *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir.1988) (same); *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir.1987) (same); *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988) (Trustee

and the owners no longer exist, and that the corporation is a mere instrumentality of the stockholder's own affairs. *Marett v. Professional Ins. Careers, Inc.*, 201 Ga.App. 178, 410 S.E.2d 373 (1991). The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise when a party abuses the privilege of using the corporate form. *Jenkins v. Judith Sans Internationale, Inc.*, 175 Ga.App. 171, 332 S.E.2d 687 (1985). While an alter ego

action is not precisely the same as an action to pierce the corporate veil, the causes of action are similar enough in substance to be considered substantially the same for purposes of this order. The terms may be used singularly or in conjunction with each other in the text that follows to signify the same *type* of action, that is, an action to disregard the corporate form in order to reach entities and/or individuals holding stock.

lacks standing to assert alter ego claim); *Mixon v. Anderson (In re Ozark Restaurant Equip. Co., Inc.),* 816 F.2d 1222 (8th Cir. 1987), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (same).

### A. Alter Ego Action under Georgia Law

State law governs the causes of action that can be asserted by a bankruptcy trustee as property of the estate. *Koch Refining, supra* at 1348. In cases where state law allows a subsidiary corporation to assert an alter ego action against its own parent corporation, or when a corporation may under state law assert the claim against its own principals, the trustee in bankruptcy succeeds to rights the debtor corporation holds and is therefore afforded standing to bring such an action on behalf of the debtor corporation. *See S.I. Acquisition, supra* at 1152 (Texas law allows subsidiary alter ego action against parent); *St. Paul Fire & Marine Ins., supra* at 703 (Ohio law permits corporation to pursue alter ego action against parent); *Steyr–Daimler–Puch, supra* at 136 (Virginia law recognizes right of corporation to proceed against its principals on alter ego claim); *Koch Refining, supra* at 1345–46 (Illinois and Indiana law permit alter ego action against principals). Conversely, when state law does not recognize an alter ego action by a corporation against its parent or principals, the trustee is logically found lacking the right to pursue an action the debtor corporation itself did not hold. *See Mixon, supra* at 1225 (Arkansas case law vests alter ego action in third parties; therefore, corporation may not pierce its own corporate veil).

Georgia law lacks unequivocal statutory or binding judicial determination that a corporation may entertain an action against its own parent or principals. However,

> Georgia law concerning the alter ego doctrine is similar to the state laws analyzed in *Koch* and *SI Acquisition* [which permit actions by a corporate entity against its parent or principals]. The Georgia Supreme Court defined the alter ego doctrine as a disregard by the stockholders of the corporate entity which creates "such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist" so that adherence to the corporate entity "would promote injustice or protect fraud." *Farmers Warehouse of Pelham, Inc. v. Collins,* 220 Ga. 141, 150, 137 S.E.2d 619 (1964). As with the state laws analyzed in *Koch* and *SI Acquisitions,* the emphasis under Georgia law appears to be equitable concerns rather that the specific relationships between the alter ego and the creditors.... Therefore, as in *Koch* and *SI Acquisitions* [*Acquisition*], under Georgia law, an alter ego claim is property of the estate under § 541 and can be asserted by the Trustee.

*Stamps v. Knobloch (In re City Communications, Ltd.),* 105 B.R. 1018, 1022 (Bankr. N.D.Ga.1989) (hereinafter "*City Communications* "). The equitable nature of the proceeding leads to the expansion of traditional notions of standing.

> It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor. In some states, however, piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors. *See, e.g., Bucyrus–Erie Co. v. General Prod. Corp.,* 643 F.2d 413, 419 (6th Cir.1981) (in Ohio, a court will disregard a corporate fiction whenever its retention will produce injustice or inequitable consequences).... Because piercing the corporate veil or alter ego causes of action are based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.

*Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1240 n. 20 (3rd Cir.1984).

> Furthermore, it is not at all clear that a corporation would be forbidden to pierce its own corporate veil in a non-bankruptcy context. There is no inconsistency in allowing such an action. The alter ego doctrine is an equitable remedy which may be invoked for some purposes and not others. It may be utilized when equity requires, such as to protect innocent parties, rather

than as a defense to the liability of defaulting fiduciaries. The corporation may be thought of as a separate legal entity which has an interest of its own in assuring that it can meet its responsibility to creditors, while at the same time allowing it to argue that it should be deemed to be identical to its alleged alter ego for purposes of paying those creditors. There is only a practical-not a legal or logical-difficulty in a corporation's bringing an alter ego action in its own name: The defendants who so completely dominate the corporation as to constitute its alter egos are not likely to institute an action to determine their own liability for corporate debts.

*Henderson v. Buchanan (In re Western World Funding, Inc.),* 52 B.R. 743, 784 (Bankr.D.Nev.1985) (citations omitted), *aff'd,* 131 B.R. 859 (D.Nev.1990), *rev'd on other grounds,* 985 F.2d 1021 (9th Cir.1993).

The absence of binding Georgia case law holding precisely that a corporation may pierce its own veil does not invalidate the conclusion that the trustee has standing to pursue an alter ego claim. To the contrary, it is to be expected that those parties controlling a corporation would be unlikely to initiate an action on behalf of the corporation against themselves. Within the bankruptcy context, however, it is entirely reasonable that an objective third-party, the trustee, would pursue the claim to enhance the debtor's estate. *See generally City Communications, supra* at 1022; *Western World Funding, supra* at 783. *See also e.g., Summit–Top Dev., Inc. v. Williamson Constr., Inc.,* 203 Ga.App. 460, 416 S.E.2d 889 (1992) (disregard corporate entity when used to defeat justice, perpetrate fraud, or evade responsibility); *Derbyshire v. United Builders Supplies, Inc.,* 194 Ga.App. 840, 392 S.E.2d 37

(1990) (disregard corporate entity when adherence would promote injustice or protect fraud).

### 1. 11 U.S.C. § 541(a) and State Law Alter Ego Claims

▮▮▮▮ Bankruptcy Code § 541(a) establishes the general extent of the property of the estate.[4] To the extent the debtor had a cause of action at the commencement of the case, the cause of action or claim by the debtor against another is a legal interest of the debtor of the type contemplated by § 541(a)(1) and therefore property of the estate. *See generally 4 Collier on Bankruptcy* ¶ 541.01 (15th ed. 1995). Pursuant to 11 U.S.C. § 704(1), a Chapter 7 trustee shall "collect and reduce to money the property of the estate." The trustee is the proper party to pursue a cause of action. *See e.g., Jones v. Harrell,* 858 F.2d 667 (11th Cir.1988) (trustee succeeds to debtor's personal injury claim); *Miller v. Shallowford Community Hosp., Inc.,* 767 F.2d 1556 (11th Cir.1985) (trustee succeeds to debtor's contractual insurance cause of action); *In re Yonikus,* 996 F.2d 866 (7th Cir.1993) (trustee succeeds to debtor's worker's compensation claim). Thus, because an alter ego action under Georgia law is primarily a suit in equity that would permit a debtor corporation to proceed against its own principals, *City Communications, supra,* the trustee succeeds to such interest of the estate and has standing to bring the alter ego action. Sidex and Lignacon are therefore unnecessary to the prosecution of the complaint.

### 2. 11 U.S.C. § 544 and State Law Alter Ego Claims

▮▮▮ Section 544(a) of the Bankruptcy Code grants hypothetical lien creditor status to the trustee.[5] With such status, arguably,

---

4. Section 541(a) provides in pertinent part:
   (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) ... all legal and equitable interests of the debtor in property as of commencement of the case....

5. Section 544(a) provides in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could

the trustee has an independent basis for standing to bring an alter ego action because the trustee acts *in pari materia* with an aggrieved creditor; therefore, standing is not derived from the debtor estate. *See Western World Funding, supra* at 783. Other courts deem unnecessary an analysis of the trustee's standing to pursue an alter ego claim on behalf of the debtor corporation's estate under § 544 after an analysis of state law and § 541. E.g., *Steyr–Daimler–Puch, supra* at 136; See also *City Communications, supra* at 1021 (while holding trustee has standing to pursue alter ego action on behalf of debtor, finds § 544 does not provide a basis for trustee's standing). The United States Supreme Court held in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), a case decided under the Bankruptcy Act, that a bankruptcy trustee under Chapter X (now similarly a trustee under Chapter 11) did not have standing to pursue an action against a third-party solely for the benefit of the debtor's creditors. The Circuit Courts in *Mixon, supra*, and *Williams, supra*, rely upon *Caplin* to establish that through Congressional failure to explicitly provide for a different treatment in the Bankruptcy Code, Congress intended that *Caplin* remain viable and no trustee has standing to pursue general causes of action on behalf of creditors, including alter ego causes of action. *See Williams, supra* at 667. *Caplin* controls as to § 544, but does not address the state law analysis critical to a § 541 recovery, and therefore does not control the final result in this case.

The bankruptcy trustee in *Caplin* attempted to recover damages on behalf of debenture holders of the debtor, who were creditors of the estate, against the indenture trustee for the securities. The indenture trustee, Midland, was responsible for monitoring the debtor's financial position for the protection of the security holders. The bankruptcy trustee alleged a breach of fiduciary duty by Midland. The Supreme Court outlined three reasons for denying standing to the bankruptcy trustee. First, the Court was unable to find any statutory authorization for a trustee to institute an action to collect money which did not belong to the estate. The trustee's task was simply to collect and reduce to money the property of the estate. *Caplin, supra*, 406 U.S. at 428, 92 S.Ct. at 1685 (citing Bankruptcy Act § 75, now Bankruptcy Code § 704(1)). Second, because the debtor itself provided the allegedly fraudulent financial information that Midland was charged with knowingly accepting, the Court was unable to find that the debtor itself had a possible cause of action against Midland. *Id.* at 429, 92 S.Ct. at 1686. Finally, dual concerns were raised that (1) the trustee's suit would not preempt individual suits by debenture holders and it was conceivable other suits would be brought, and (2) it was questionable whether any settlement would bind all the parties. *Id.* at 431–32, 92 S.Ct. at 1687. Notably, the Court invited Congress to resolve the policy implications of granting standing to bankruptcy trustees to pursue the claims of creditors.

Congress might well decide that reorganizations have not fared badly in the 34 years since Chapter X was enacted and that the status quo is preferable to inviting new problems by making changes in the system. Or, Congress could determine that the trustee in a reorganization was so well situated for bringing suits against indenture trustees that he should be permitted to do so.... Any number of alternatives are available.... Whatever the decision, it is one only Congress can make.

*Id.* at 434, 92 S.Ct. at 1688. Congress responded with proposed § 544(c) of the Bankruptcy Code. Section 544(c) was intended to grant standing to the bankruptcy trustee to pursue claims of a single creditor or class of creditors if the recovery would reduce the creditors' claims against the estate. *See Mixon, supra* at 1227–1228 n. 9 (complete text and partial legislative history of § 544(c) reproduced). However, this subsection was deleted without comment from the final bill during joint conference. *Id.* at 1228 n. 10. Congressional rejection of the proposed § 544(c) is a strong indication that the trustee does not have standing to pursue creditors' causes of action. "Few principles of

have obtained such a judicial lien, whether or

not such a creditor exists; ...

statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded...." *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 442–43, 107 S.Ct. 1207, 1219, 94 L.Ed.2d 434 (1987) (citation omitted). *Accord Slaven v. BP Am., Inc.,* 973 F.2d 1468 (9th Cir.1992) (earlier Congressional expressed rejection of certain statutory language dictates against interpreting the statute in a manner consistent with the rejected language). Accordingly, I find *Mixon, supra,* persuasive as to the trustee's lack of standing to pursue an alter ego claim arising from the trustee's hypothetical creditor status under § 544.

Agreement with *Mixon* as to § 544 does not invalidate my prior conclusion. *Mixon* finds that a trustee does not have standing to pursue an alter ego claim based on an *independent analysis* of both *Caplin* (and § 544), and the analysis of Arkansas corporate law (in conjunction with § 541). *Mixon, supra* at 1225–30. Because I find that the substantive effect of Georgia law permits the trustee to pursue an alter ego claim on behalf of the debtor, while *Mixon* failed to find such a right in the debtor under the laws of Arkansas, agreement with the *Mixon* analysis of § 544 and *Caplin* does not require that I reach a similar denial of trustee's standing. The result in *Caplin* is based entirely on the trustee assuming a right held by a *creditor.* The Supreme Court found that the debtor had no conceivable claim against Midland, thus the predecessor to § 541(a) was not implicated in the decision.[6] *See Caplin, supra,* 406 U.S. at 430, 92 S.Ct. at 1686. In conclusion, while controlling as to § 544, neither *Caplin* nor *Mixon* control the result reached under state law and § 541(a).

Although the Eleventh Circuit has not decided this precise issue, it has cited both *Mixon* and *Williams* with approval. *See E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979 (11th Cir.1990). In *Hadley* the Eleventh

Circuit held that a bankruptcy trustee did not have standing to pursue a negligence claim against a broker on behalf of estate creditors who had purchased government-backed mortgage securities from the debtor. As with *Caplin, Hadley* is distinguishable because the trustee was again only asserting the claims of a group of creditors, not the debtor. In *Hadley,* counsel for the trustee conceded the point and admitted the claim had never been on behalf of the debtor because, as in *Caplin,* the debtor stood *in pari delicto* with E.F. Hutton, the defendant in the negligence suit. *Id.* at 985. Further, the Eleventh Circuit explicitly limited the holding, and its adoption of *Mixon* and *Williams,* to the facts of the case. *Id.* With such a limitation, and the distinguishable facts of the case, *Hadley* is not controlling in this case in determining whether the trustee has standing to pursue an alter ego claim on behalf of the *debtor.*

Because I find Georgia law supports an alter ego action by the debtor, and because the trustee succeeds to the right to institute such an action, I find Lignacon and Sidex unnecessary as party plaintiffs to the trustee's action to recover property and are dismissed.

## II. Trustee's Application to Approve Counsel

Defendants have objected to the trustee's application to name Louis Saul and Jeffrey Butler as counsel for the trustee for the limited purpose of prosecuting this adversary. In their brief, the defendants assert four grounds for the objection:

(A) appointment of proposed counsel violates the statutory standards of independence necessary under § 327;

(B) the affidavits filed by Mr. Saul and Mr. Butler are said to be defective under Federal Rules of Bankruptcy Procedure (FRBP) 2014;

---

6. Other courts deciding the issue of a trustee's standing in an alter ego action have distinguished *Caplin* by the difference between a trustee instituting an action personal to an identifiable creditor or creditors and a trustee instituting a general claim on behalf of all creditors, *Koch Refining, supra* at 1348–49, and the signifi-

cance of the characterization of Midland as an indenture trustee subject to an "elaborate system of controls" which did not exist in an alter ego action or state tort claim, *PepsiCo, supra* at 700. I fail to find these distinctions persuasive and, therefore, not controlling in this case.

(C) Mr. Saul's familiarity with the case is said to disqualify him because he may be called as a material witness; and

(D) rules of professional ethics governing attorney representations are violated.[7]

### A. Messrs. Saul and Butler Are Not Disqualified From Representing the Trustee Under 11 U.S.C. § 327.

█ With Lignacon and Sidex dismissed as plaintiffs, the resolution of Messrs. Saul and Butler's representation of the trustee as special counsel is straightforward. Retention of Messrs. Saul and Butler is expressly for the purpose of acting as special counsel to the trustee for this particular adversary proceeding. Without Lignacon and Sidex as parties to the action, the allegations of conflict of interest lose their force.

Employment of professional persons by the trustee is controlled by 11 U.S.C. § 327. In particular, § 327(a) establishes the general standard to evaluate applications for employment:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). The Bankruptcy Code creates a special standard to evaluate potential conflicts of interest in employment decisions by the trustee for special purpose actions. Section 327(e) reads:

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). This Code provision fails to address the particular circumstances of this case. It is unclear under § 327(e) whether the trustee may retain an attorney representing a creditor as special counsel. Mention is made only of an attorney for the debtor. Section 327(c) provides the rule for employment of professional persons who represent creditors:

(c) In a case under chapter 7, 12, or 11 of this title, *a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless* there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if *there is an actual conflict of interest.*

11 U.S.C. § 327(c) (emphasis added). Several courts presented with the question of whether the trustee may retain a creditor's attorney as special counsel have concluded that the omission of authority in § 327(e) to employ an attorney of a creditor was unintentional. *See e.g., In re Arochem Corp.,* 181 B.R. 693, 698 (Bankr.D.Conn.1995).

The employment of trustee's special counsel who represents, or has represented, creditors is not covered by the Bankruptcy Reform Act. By contrast, § 327(e) of the Code specifically provides that, under certain circumstances, the attorney for the debtor may serve as special counsel for the trustee. It does not require as a condition of such employment that the attorney cease representing the debtor in the case. Less adversity of interest would normally be involved when the person sought to be appointed special counsel represents a creditor than when he or she represents the debtor. There is no reason why Congress should intend a more restrictive provision to apply to a creditor's attorney, keeping in mind that the primary reason for such restrictions is the avoidance of conflicts of interest. We therefore conclude that the omission to provide for the employment of trustee's special counsel,

---

7. Each ground for objection is addressed individually with the exception of the objection relating to the rules of professional ethics. This objection will be considered appropriately with the discussion of the perceived conflict of interest under § 327 and the potential for Mr. Saul testifying.

who also represents creditors in the case, was an oversight.

*In re Fondiller,* 15 B.R. 890, 892 (BAP 9th Cir.1981), *appeal dismissed,* 707 F.2d 441 (9th Cir.1983). Section 327(e) read together with § 327(c) controls retention of special counsel, including authorization for attorneys representing either creditors or the debtor. Section 327(a) sets the more general standard for conflicts in the employment of general counsel for the trustee. *Arochem, supra* at 699.

As § 327(a) is not at issue, no inquiry is made as to Messrs. Saul or Butler's "representat[ion of] an interest adverse to the estate" and [their] "disinterested[ness]." *See* 11 U.S.C. § 327(a). The sole question under § 327(e) is whether Messrs. Saul or Butler hold "any interest adverse to the debtor or to the estate *with respect to the matter on which such attorney is to be employed.*" 11 U.S.C. § 327(e) (emphasis added). The test for a conflict of interest in § 327(c) requires an *actual* conflict.

The actual conflict test of § 327(c) is subsumed in this instance by the test in § 327(e) requiring freedom from an adverse interest with respect to the subject matter of the special counsel action. Section 327(e) in effect requires the court to make the limited inquiry into whether there is an actual conflict in the special matter only. Thus, on these facts, the test of § 327(c) is redundant. I do not find a conflict between Mr. Saul's representation of Lignacon or Mr. Butler's representation of Sidex, creditors in this matter, and their being named special counsel for the trustee to pursue alleged improper transfers which would enhance the estate for all creditors.

■ The Court of Appeals for the Ninth Circuit came to a similar conclusion under remarkably similar facts. *Stoumbos v. Kilimnik,* 988 F.2d 949 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993). In *Stoumbos,* the bankruptcy court's approval of special counsel was challenged on cross-appeal on the grounds that counsel should have been disqualified

from employment by the trustee because of prior representation of one of the creditors that had filed the involuntary petition against the debtor. In affirming the retention of creditor's counsel as special counsel to the trustee, the court looked to §§ 327(c) and (e) and determined that counsel need only be free from conflict with respect to the specific matter necessitating the naming of special counsel itself. *Id.* at 964. Most persuasive is the court's recognition that "with respect to the ... preference action, the interests of [the creditor] and the trustee coincide: if money is recovered for the estate, [the creditor's] pro rata recovery will ultimately be greater." *Id.* There is no conflict where the interests represented by special counsel are parallel, rather than adverse. *In re Sally Shops, Inc.,* 50 B.R. 264, 267 (Bankr.E.D.Pa. 1985). I adopt the reasoning in *Arochem* and *Stoumbos* and find Messrs. Saul and Butler competent to represent the trustee in this adversary.

■ Analysis of the applicable standards of ethical conduct yields the same result as the analysis under § 327. The defendants cite several provisions of the ABA Model Code of Professional Responsibility (hereinafter the "ABA Code") in support of their contention that Messrs. Saul and Butler should be disqualified from representing the Trustee. However, the ABA Model Rules of Professional Conduct (hereinafter the "ABA Rules") replaced the ABA Code in August 1983, and is the current standard of attorney conduct in the Southern District of Georgia.[8] *Waters v. Kemp,* 845 F.2d 260 (11th Cir. 1988).

The ABA Rules provide that:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

---

**8.** Local Rule 505(d) of the Southern District of Georgia adopts the current canons of professional ethics of the American Bar Association.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

ABA Rule 1.7.

█ The standard under the ABA Rules is the same as under § 327(c). Only an actual, not a potential, conflict of interest will disqualify an attorney from representing multiple clients. *Waters*, 845 F.2d at 263. The appearance of impropriety standard asserted by the defendants under Canon 9 is no longer applicable under the ABA Rules. *Id.* at 265, n. 12.

As discussed above, I find no actual conflict of interest which would prohibit Messrs. Saul and Butler from representing the Trustee. Furthermore, in the event that such conflict was found, ABA Rule 1.7 allows the Trustee, Lignacon and Sidex to waive that conflict after proper disclosure.

## B. Sufficiency of Mr. Saul's and Mr. Butler's Affidavits Under FRBP 2014.

█ Defendants have also moved to disqualify Messrs. Saul and Butler as counsel in this adversary proceeding because their affidavits allegedly fail to disclose the following connections between these attorneys and the bankruptcy case: (i) the litigation between Lignacon and the Debtor; (ii) the recent litigation between Sidex and the Debtor; (iii) various ongoing litigation between Lignacon and Norson's; and (iv) a potential claim allegedly held by the bankruptcy estate against Lignacon. Even if the affidavits fail to identify all relevant contacts between Messrs. Saul and Butler, I do not find that such deficiency would warrant disqualification of counsel.

As discussed fully in Subsection A. above, the connections of Messrs. Saul and Butler with Lignacon and Sidex, respectively, do not warrant disqualification under 11 U.S.C. § 327(e). As the omitted contacts do not disqualify them from representation of the Trustee under § 327(e), counsel is not disqualified from representing the trustee for failing to disclose these contacts. *See, In re Servico, Inc.,* 149 B.R. 1009, 1013 (Bankr. S.D.Fla.1993) (counsel for creditor seeking appointment as special counsel for trustee not required to disclose potential preference action against creditor). *See also, In re Black & White Cab Co., Inc.,* 175 B.R. 24 (Bankr.E.D.Ark.1984).

█ Even if the omitted facts should have been disclosed in the affidavits, the court has broad discretion to determine whether the non-disclosure justifies disqualification. Under the circumstances of this case, any non-disclosure was harmless. *See, In re Film Ventures Int'l, Inc.,* 75 B.R. 250, 253 (9th Cir. BAP 1987) (If the very court for which the statute was intended to aid finds no actual need to take remedial measure, that decision will be upheld absent an abuse of discretion.)

In support of their contention that Messrs. Saul and Butler should be disqualified for failing to disclose in their affidavits all relevant contacts, the defendants cite my previous opinion in this case disqualifying the debtor's attorney. *See, In re Adam Furniture Indus. Inc.,* 158 B.R. 291 (Bankr.S.D.Ga. 1993). However, in that opinion, I stated that the material omissions, standing alone, did not warrant disqualification. *Id.* at 299. Instead, I found actual conflicts of interest which disqualified Debtor's counsel. *Id.* at 300. Contrarily, I find no such conflicts of interest here to prohibit Messrs. Saul and Butler from representing the Trustee. Therefore, Messrs. Saul and Butler should not be disqualified for failing to disclose in their affidavits contacts which are not actual conflicts of interest.

## C. Mr. Saul's Familiarity With the Case Does Not Warrant Disqualification.

█ Movants claim that Mr. Saul's knowledge of the facts of this case necessi-

tate that he testify. The defendants cite the ABA Code in support for their contention that Mr. Saul should be disqualified as attorney for the Trustee:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial ...

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

ABA Code DR 5–102.

In *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526 (5th Cir.1981), the Court of Appeals analyzed Florida's adoption of the ABA Code, DR 5–102. For a party to successfully remove opposing counsel from representation at trial, a movant must show that opposing counsel has knowledge of facts which either: 1) makes it obligatory for the attorney to place himself on the witness stand to advance his case zealously and completely, or 2) that it is likely or probable that the attorney will be called to the witness stand to provide testimony adverse to his client on a matter important to the movant. *Id.* at 530–531. The defendants in the instant case have not provided any evidence that Mr. Saul will have to take the witness stand on behalf of the trustee, or that he will be called as a witness for the defendants to provide testimony adverse to the trustee's interest. If I later determine that Mr. Saul must testify, then disqualification would be appropriate. DR 5–102(A) clearly states that in the event the attorney ought to testify at trial, he and his firm should "... withdraw from the *conduct of the trial* ..." (emphasis added). *See In re Historic Macon Station Ltd.*, 126 B.R. 816, 820 (Bankr.M.D.Ga.1991); *See also, In re Proper Yacht Specialists, Inc.*, 38 B.R. 304, 307 (Bankr.N.D.Ga.1984).

However, DR 102 is not the current standard.

The ABA Rules which supersede the ABA Code and are the applicable ethical rules in the Southern District of Georgia simplify the analysis under former ABA Code DR 101 and 102 by providing that:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

ABA Rule 3.7.

Nothing before me indicates that Mr. Saul "is likely to be a necessary witness." "The 'likely to be a necessary witness' language of Rule 3.7(a) requires an even more specific showing of necessity than did the provisions of the predecessor Model [ABA] Code." (citation omitted) ABA Model Rules of Professional Conduct Comment (1995 ed.). If, through discovery, either party later demonstrates that Mr. Saul's participation as a witness is required, then Mr. Saul must not act as advocate for the trustee at the trial of the case.

It is therefore ORDERED that the Defendants' Motion to Dismiss Lignacon and Sidex is GRANTED; and it is

FURTHER ORDERED that the Defendants' motion to disqualify Messrs. Saul and Butler as attorneys for the Trustee is DENIED.