For the foregoing reasons, the order of the bankruptcy court is affirmed. Our disposition of this matter renders it unnecessary to address Moulton's cross appeal.

**In re Thomas Peter PAPPAS, Debtor.**

**Bankruptcy No. 96–23342.**

United States Bankruptcy Court,
D. Connecticut.

Dec. 19, 1997.

Madeleine F. Grossman, Judy A. Rabkin, Levett, Rockwood & Sanders Professional Corporation, Westport, CT, for Trustee.

John J. O'Neil, Francis, O'Neil & Delpiano, Hartford, CT, for Trustee.

Thomas C. Boscarino, Boatman, Boscarino & Grasso, Glastonbury, CT, for Debtor.

George M. Purtill, Seth Jacoby, Purtill, Purtill & Pfeffer, Glastonbury, CT, for Mary Louise Pappas.

Mark R. Carta, William Carello, Rucci, Burnham, Carta & Edelberg, L.L.P., Darien, CT, for David M. Robinson, Trustee.

MEMORANDUM OF DECISION AND ORDER ON TRUSTEE'S SUPPLEMENTAL APPLICATION FOR EMPLOYMENT OF LEVETT, ROCKWOOD & SANDERS PROFESSIONAL CORPORATION AS SPECIAL ATTORNEY FOR TRUSTEE

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The matter before the court is a supplemental application (the "supplemental application") of John J. O'Neil, Jr., ("the trustee"), Trustee of the Chapter 7 Estate of Thomas Peter Pappas ("the debtor"), for court approval of the employment of Levett, Rockwood & Sanders, Professional Corporation ("LR & S") to continue to represent the trustee for a specified special purpose—to prosecute fraudulent conveyance and avoidance actions. The court, on February 10, 1997, had originally approved LR & S's employment, *ex parte*, on the trustee's application ("the original application"). The United States Trustee ("the U.S. Trustee") executed a "No Objection" endorsement to the proposed order submitted with the original application.

On March 6, 1997, LR & S, on behalf of the trustee, filed an adversary proceeding ("the adversary proceeding") against David M. Robinson ("Robinson"), the debtor's brother-in-law and Trustee of the T. Peter Pappas Family Trust, Mary Louise Pappas ("Ms. Pappas"), the debtor's wife, and James C. Freund, as Escrow Agent, to establish that assets in a trust created by the debtor, as well as other assets the debtor had allegedly transferred to Ms. Pappas, belonged to the debtor's estate. The supplemental application, filed on August 13, 1997, followed disclosure, during a motion hearing in the

adversary proceeding, that the trustee and LR & S had omitted information concerning current payment of LR & S's legal fees and expenses.

Following notice to all creditors and a hearing held on the supplemental application on September 4, 1997, the court overrules the various objections of the debtor and the U.S. Trustee, concludes that Ms. Pappas and Robinson lack standing to be heard, and approves the trustee's supplemental application to employ LR & S.

## II.

The debtor filed his Chapter 7 petition on September 18, 1996, scheduling nearly $80 million in liabilities and no non-exempted assets. Among his creditors, the debtor listed Bankers Trust Company ("BTCo") as holding a disputed claim of $7,385,566.95. Attorneys Madeleine F. Grossman ("Grossman") and Judy A. Rabkin ("Rabkin") of LR & S filed appearances on behalf of BTCo in the debtor's case. Prior to the debtor filing his bankruptcy petition, BTCo had retained LR & S to enforce in Connecticut a judgment BTCo had obtained in a New York action against the debtor, his brother, James Pappas ("James"), and various other entities.

In the original application, the trustee stated that LR & S represented a creditor, BTCo; that LR & S's compensation for its services would be contingent and based upon the amount recovered, with the firm to receive 33⅓% of the first $240,000, 25% of the next $510,000, and 15% of any amount in excess of $510,000; and that LR & S represented no interest adverse to the trustee. Grossman and Rabkin executed accompanying affidavits, each averring that the affiant had no connections with the debtor, his creditors or any party in interest "other than my firm's representation of Bankers Trust Company, a creditor in this case."

During a July 16, 1997 hearing on Grossman's motion for a protective order, Grossman acknowledged that the trustee's initial application (and the accompanying affidavits) had not stated that BTCo had agreed to pay LR & S's current legal fees and costs during LR & S's representation of the trustee in the adversary proceeding. Grossman further advised the court that if LR & S were to recover a contingent fee, it would reimburse BTCo for the fees and costs BTCo had advanced. Following a colloquy with the court, Grossman agreed that she would request the trustee to file a supplemental application, which would include the omitted information and which would be set for a hearing.

The trustee, on August 13, 1997, filed a pleading entitled "Supplemental Trustee's Application For An Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing the Employment of Special Counsel Nunc Pro Tunc." In the supplemental application, the trustee represented that when the court had entered the February 10, 1997 order, the trustee knew that "LR & S had agreed to this contingent fee arrangement based on an agreement between LR & S and...BTCo..., which provided that BTCo would be responsible for all costs and expenses involved in the investigation and prosecution of the actions by LR & S on behalf of the estate," *supplemental application* ¶ 3; that "the Estate would assume no responsibility for any fees and expenses absent recovery and that should a recovery occur the Estate's obligation would be limited to the amount of the contingent fee," *Id.;* and that "BTCo would receive a credit from LR & S for any amounts recovered under the contingent fee arrangement in the event of a recovery." *Id.* The trustee also represented that the February 10, 1997 order had partly misstated the fee agreement between the trustee and LR & S in that the agreement is based upon amounts recovered as follows: 33⅓% of the first $240,000, 25% of the next $510,000, and 15% of any amounts in excess of $750,000. *Id.* ¶ 4.

Grossman's and Rabkin's accompanying affidavits stated that to induce LR & S to enter into a contingent fee arrangement with the trustee, BTCo had agreed to pay the firm's fees and expenses. The affidavits went on to aver that

> [i]n consideration of BTCo's agreement to make such payments, LR & S agreed with BTCo that it would reimburse BTCo from any contingent recovery it received, and that any fees paid to LR & S by the estate in excess of payments made by BTCo

would be paid over to the estate, to be distributed to unsecured creditors, including BTCo.

*Grossman Aff.* ¶ 6; *Rabkin Aff.* ¶ 6.

The debtor, on September 4, 1997, filed an Objection to the Supplemental Application (the "Debtor's Objection") and accompanying Memorandum of Law (the "Debtor's Memorandum"), followed by a Supplemental Objection and Memorandum of Law on September 11, 1997 ("Debtor's Supplemental Objection"). Ms. Pappas, identifying herself as a "party in interest," filed an Objection ("Ms. Pappas' Objection") and a Supplemental Objection and Memorandum of Law ("Ms. Pappas' Supplemental Objection") on August 19 and September 11, 1997, respectively. Robinson, describing himself as a "party in interest," on September 18, 1997, filed a Memorandum opposing the supplemental application ("Robinson's Memorandum"). The trustee filed his Response to the objections (the "Trustee's Response") and LR & S filed a brief that the trustee adopted (the "Trustee's Memorandum") on October 10, 1997. Ms. Pappas and Robinson, on October 21, 1997, jointly replied to the Trustee's Response ("Reply"), and Ms. Pappas on the same date filed a supplement to the joint reply ("Supplement to Reply"). The trustee filed an Objection and response to the October 21, 1997 Supplement to Reply on October 28, 1997. The U.S. Trustee, on November 14, 1997, filed the penultimate Objection to the Supplemental Application ("U.S. Trustee's Objection"). Lastly, LR & S filed a Response to the U.S. Trustee's Objection ("LR & S's Response") on November 21, 1997.

### III.

The debtor, Ms. Pappas, Robinson, and/or the U.S. Trustee argue that LR & S's failure to disclose its fee agreement with BTCo violated the disclosure requirements in Fed. R.Bankr.P. 2014(a) warranting disqualification of LR & S, *Debtor's Memorandum* at 5–11, or disallowance and disgorgement of all payments LR & S has received from BTCo, *U.S. Trustee's Objection* at 4–6; that the *nunc pro tunc* relief sought is not justified, *U.S. Trustee's Objection* at 6–9; that LR &

S's representation of both the trustee and BTCo constitutes a conflict of interest, *Debtor's Supplemental Objection* at 1–6; *Debtor's Memorandum* at 11–17, *Ms. Pappas' Supplemental Objection* at 1–6, 17, *U.S. Trustee's Objection* at 3–4; that the dual representation implicates Rules 1.5(b), 1.7, 1.8(f), and 5.4(a) and (c) of the Rules of Professional Conduct, *Ms. Pappas' Supplemental Objection* at 7–18; that the proposed and actual scope of LR & S's employment exceeds that permitted special counsel under § 327(e), *Robinson's Memorandum* at 2; and that the supplemental application fails to define the scope of employment specifically enough to permit the court to evaluate whether a conflict exists. *Id.* The trustee and LR & S respond that the nondisclosure does not warrant disqualification, *Trustee's Memorandum* at 15–17, *LR & S's Objection* at 2–4; that no disqualifying conflict of interest exists, *Trustee's Memorandum* at 21–28, *LR & S's Response* at 2; that LR & S has not violated any ethical rules, *Trustee's Memorandum* at 30–34; and that the scope of LR & S's employment is not too broad to comply with § 327(e), *Id.* at 18–20. The trustee questions the standing of the debtor, Ms. Pappas, and Robinson to object to the supplemental application. *Trustee's Response* at 1–2.

### IV.

Bankruptcy Code § 327 provides the underpinning for a bankruptcy trustee's retention of attorneys. In relevant part, § 327 states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys...that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United

States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

. . .

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327.

Bankruptcy Code § 328(a) authorizes several non-exclusive options for payment arrangements: "The trustee . . ., with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

### A.

The trustee questions the standing of the debtor, Ms. Pappas, and Robinson to be heard on his supplemental application. Lack of standing is a threshold issue for the court to decide before considering the objections of these parties.

Ms. Pappas and Robinson separately labelled each pleading as filed by a "party in interest." Despite the trustee's having questioned their standing, the court finds no dis-

cussion of this question in either Ms. Pappas' or Robinson's memoranda. They neither assert that they are estate creditors nor advance any reason why they are entitled to be heard on a § 327 application. Clearly, simply as potential defendants they would have had no standing to be heard had the court held a hearing on the trustee's original application.

The Federal Rules of Bankruptcy Procedure do not mandate notice and a hearing on court orders issued pursuant to § 327. *See* Fed.R.Bankr.P. 2014[1]; *Land v. First Nat'l Bank in Alamosa (In re Land),* 116 B.R. 798, 800 n. 1, *aff'd,* 943 F.2d 1265 (10th Cir.1991) (noting that § 327 contains no express requirement of either notice or a hearing on an application for employment); *cf.* Fed.R.Bankr.P. 2002 (dealing with matters to be noticed for hearing and referring in subsections (a) and (b) to "Parties in Interest" as "the debtor, the trustee, all creditors and indenture trustees"). The plain language of § 327(c) contemplates objections only by "another creditor or the United States Trustee." As a simple matter of statutory construction, Ms. Pappas and Robinson lack standing to object to a § 327 application. *Cf. Block v. Community Nutrition Inst.,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270, 278 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.")

Article III requires a plaintiff to allege, *inter alia,* " ' . . . such a personal stake

---

1. Fed.R.Bankr.P. 2014(a) provides that:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

in the outcome of the controversy' as to...justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975), *quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The asserted injury must be "distinct and palpable." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d at 356. Neither Ms. Pappas nor Robinson have asserted a personal stake in the trustee's employment of LR & S, much less a "distinct and palpable" injury. Additionally, prudential principles require, *inter alia,* that a party's complaint fall within "the zone of interests to be protected or regulated by the statute...in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188 (1970). By empowering the trustee to retain professionals for the benefit of the estate, § 327 protects the interests of creditors. Ms. Pappas and Robinson do not fall within the zone of interests protected by § 327.

■ The court, accordingly, concludes that Ms. Pappas and Robinson have not established that they possess the requisite standing for their pleadings, identified herein, to be considered under a § 327 application. They filed no motion in the adversary proceeding to disqualify LR & S, and the court may not overlook their lack of standing in the present matter.[2] Fed.R.Bankr.P. 2002 refers to a debtor as a "party in interest," and the court concludes that a debtor does have standing to be heard on a § 327 application, except to the extent limited by § 327(c).

### B.

This court has in more than one instance approved a trustee's employment of attorneys who also represented a creditor in an assetless estate where the creditor in effect guaranteed the payment of the attorneys' fees.[3] Otherwise, facially viable estate causes of action might have to be abandoned. So long as there is no actual conflict of interest, such arrangements are nowhere proscribed.

The Bankruptcy Code does not define the phrase "actual conflict of interest," which "has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context. Courts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *In re BH & P Inc.,* 949 F.2d 1300, 1314 (3rd Cir.1991) (*citing In re Star Broadcasting, Inc.,* 81 B.R. 835, 844 (Bankr.D.N.J. 1988); *In re Hoffman,* 53 B.R. 564, 566 (Bankr.W.D.Ark.1985)).

■ Section 327(e) specifically authorizes a trustee to retain, as special counsel, an attorney who has represented the *debtor,* if in the best interest of the estate. With respect to dual representation of a *creditor* and the trustee, "[r]easoning by analogy to section 327(e), several courts have held that, where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself." *Stoumbos v. Kilimnik,* 988 F.2d 949, 964 (9th Cir. 1993) (citations omitted). It obviously is in the best interest of the Pappas estate for the trustee to employ LR & S, since the trustee states that no other counsel is available for retention. The U.S. Trustee, however, contends that an actual conflict is presented in the instant matter.

The U.S. Trustee argues:

It now appears...that BTCo is a creditor which may file a proof of claim as a *rival* against the Pappas estate. This

---

2. This conclusion is not overly significant in the present matter since most, but not all, of these objectors' arguments are subsumed within the objections of parties with standing.

3. The trustee, during the hearing on the supplemental application, offered as an excuse for his oversight that as a panel trustee he had retained creditor's counsel under like payment arrangements in a prior case with court approval.

would constitute an actual conflict of interest. The Trustee would then likely find that he must object to the proof of claim filed by BTCo and might even be compelled to institute competing adversary proceedings vis-a-vis BTCo. These potential trustee-initiated adversaries merely underscore the conflict. It is presently unclear to the U.S. Trustee whether LR & S, as counsel for BTCo, would have some non-trustee motive in pursuing one trust fund belonging to this debtor over another.

The U.S. Trustee, therefore, objects to LR & S' proposed retention as special counsel on the basis that a dual representation by LR & S (initially funded by BTCo) of both the Pappas estate and of BTCo, is an actual conflict of interest both to this estate and to other creditors, and is in violation of sections 327(a) and 327(c).[4]

*U.S. Trustee's Objection* at 3–4.

As previously noted, BTCo's $7,385,566.95 judgment against the debtor also lies against James. The U.S. Trustee expresses a concern that BTCo presently is proceeding in another jurisdiction to enforce its judgment against James and that BTCo may influence the trustee and LR & S to forbear from any fraudulent conveyance action against James. The trustee and LR & S specifically deny this possibility.[5] No record was made that the trustee and/or LR & S will not proceed, if warranted, against James and James' associated entities, to whom, the debtor suggests, fraudulent transfers may have been made. In any event, the U.S. Trustee notes in her objection that if the court grants the supplemental application the court can "direct the Trustee to retain additional special counsel in order to pursue any adversary proceedings where BTCo has any competing interest as a rival to this estate." *U.S. Trustee's Objection* at 10.

This same rationale applies to like concerns and arguments the debtor advances in his pleadings. The court concludes that, upon the record made, LR & S's dual representation of the trustee and BTCo does not constitute an actual conflict.

## V.

■ The debtor and the U.S. Trustee argue that in initially failing to disclose its fee agreement with BTCo, LR & S violated Fed. R.Bankr.P. 2014(a)[6], and that the violation requires that the firm be disqualified, *Debtor's Memorandum* at 5–6, or ordered to disgorge all the fees it has received from BTCo, *U.S. Trustee's Objection* at 5–6.

■ "The purpose of Rule 2014(a) is to ensure that all facts that may be relevant to the determination of professional qualification are before the Court." *In re Begun*, 162 B.R. 168, 177 (Bankr.N.D.Ill.1993). Because "[c]omplete disclosure is for the court's benefit so that it can scrutinize any adverse interests of the attorney," the court may excuse an attorney's initial failure to disclose. *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52, 54 (9th Cir. BAP 1994).

While the trustee and LR & S failed to disclose BTCo's agreement to advance fees and expenses to LR & S in the original application, the disclosures contained in the supplemental application have placed all the

---

**4.** The court finds these paragraphs to be unclear and infers that the U.S. Trustee refers to the possibility that BTCo and the present Thomas Peter Pappas estate might both file proofs of claim with a future James Pappas estate. Otherwise, the court cannot agree with the U.S. Trustee's bald assertion that an actual conflict exists because BTCo has filed a proof of claim. No evidence was received that there is any present ground for the trustee to dispute BTCo's proof of claim, based as it is on a state-court judgment that is nominally entitled to full faith and credit under constitutional principles. If the mere possibility that some entity might object to BTCo's proof of claim provides a ground to deny the trustee the opportunity to retain BTCo's counsel, then, as LR & S notes, that would read § 327(c) out of the Bankruptcy Code. *LR & S's Response* at 2.

**5.** BTCo executed a waiver of any objection to LR & S's pursuing, on behalf of the trustee, avoidable transfers to James or his affiliated entities. *Debtor's Exh. 15*.

**6.** *See supra* note 1.

facts relevant to LR & S's employment before the court. *Cf. In re Singson,* 41 F.3d 316, 319 (7th Cir.1994) ("Because bankruptcy is a mass-production operation, errors and oversights are inevitable. This counsels against adopting a powerful presumption against belated authorization.") The court declines to disqualify LR & S from representing the trustee.

■ The court also rejects the U.S. Trustee's argument that LR & S's initial failure to disclose the fee agreement mandates "disallowance and disgorgement" of all payments the firm received from BTCo up to July 29, 1997. *U.S. Trustee's Objection* at 5–6. The U.S. Trustee cites *In re Arlan's Department Stores, Inc.,* 615 F.2d 925, 933 (2d Cir.1979) for the proposition that "Rule 2014 disclosure requirements have long been strictly construed in the Second Circuit." *U.S. Trustee's Objection* at 5. However, *Arlan's,* decided under the Bankruptcy Act and Rule 215 of the Rules of Bankruptcy Procedure, the predecessor to Fed.R.Bankr.P. 2014, involved "not…isolated instances of oversight" but multiple intentional omissions that the court characterized as "a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy proceedings." *Id.* at 943. One of the law firms in Arlan's failed to disclose information that, had it been revealed, would have caused the district court to disqualify it. *Id.* at 931. Likewise, in *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463 (2d Cir.1981), another Bankruptcy Act case cited by the U.S. Trustee in support of disgorgement, the law firms not only violated Rule 215's disclosure requirements, but also knowingly violated a statutory proscription against fee-splitting arrangements and patently deceived the court by representing that they had abandoned the fee-splitting arrangement while covertly maintaining it. *Id.* at 469–71. In contrast, the instant case involves the trustee's single omission of information that, if revealed at the outset, would not have caused the court to deny the trustee's original application. *Cf. In re Kero–Sun, Inc.,* 58 B.R. 770 (Bankr.D.Conn.1986).

## VI.

The U.S. Trustee asserts that the court should deny the *nunc pro tunc* relief requested in the supplemental application because LR & S's initial failure to disclose its fee agreement with BTCo was not due to "excusable neglect." *U.S. Trustee's Objection* at 6–9. The court views the trustee's request for *nunc pro tunc* relief to be a request for reaffirmation of LR & S' retention during the completed portion of the adversary proceeding trial. All questions of approving payment of attorney compensation are premature at this time. When requests for compensation are filed, the court will entertain objections for a reduction or disgorgement of fees for the trustee's and LR & S's failure initially to disclose the payment arrangement with BTCo.

## VII.

The supplemental application is approved.

It is SO ORDERED.