## In re BEST CRAFT GENERAL CONTRACTOR AND DESIGN CABINET, INC., Debtor.

Alan Nisselson, Chapter 7 Trustee of Best Craft General Contractor and Design Cabinet, Inc., Plaintiff,

v.

James Wong, David Wong, Project and Systems Technology, Inc., Mary K.P. Wong, Yu Chung Shek, Promaster, Inc., and Crown Royal Development & Management, Inc., Defendants.

Bankruptcy No. 196–21852–353.
Adversary No. 198–1318–353.

United States Bankruptcy Court, E.D. New York.

Sept. 29, 1999.

Battle Fowler, LLP, New York City, by Douglas L. Furth, Mickee M. Hennessy, for Chapter 7 Trustee.

Alan Nisselson, New York City, Chapter 7 Trustee.

Law Offices of Richard L. Koral, New York City, by Richard L. Koral, for James Wong, David Wong, and Project and Systems Technology, Inc.

Law Offices of Hugh H. Mo, P.C., New York City, by Gary L. Donoyan, for Mary K.P. Wong, Yu Chung Shek, and Promaster, Inc.

Kilhenny & Felix, New York City, by James M. Felix, for Crown Royal Development & Management, Inc.

### DECISION ON MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND REQUEST FOR SANCTIONS

JEROME FELLER, Bankruptcy Judge.

Before the Court is a motion filed by James Wong, David Wong, and Project and Systems Technology, Inc., Defendants in the above-captioned adversary proceeding, which seeks to disqualify the law firm of Battle Fowler ("BF") as special litigation counsel for the Plaintiff, Alan Nisselson, the Chapter 7 trustee ("Trustee") of Best Craft General Contractor and Design Cabinet, Inc. ("Debtor"). In response, BF moves for sanctions, pursuant to Fed.

R.Bankr.P. 9011, against the Wong Defendants and their counsel for the fees and costs incurred in defending the disqualification motion.

After consideration of the motions, memoranda of law, supporting affidavits, and testimony elicited during evidentiary hearings, together with the parties' proposed findings of fact and conclusions of law, both motions are denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

## I. BACKGROUND

Formerly a construction contractor in the business of renovating residential homes and commercial offices in the New York City area, the Debtor filed for Chapter 7 relief on December 10, 1996. Approximately five months after the filing of this no-asset case, the Trustee sought authorization to employ BF as special counsel to represent the estate in litigating possible fraudulent conveyance actions, primarily against the Debtor's principals, the Wongs. Because there was no money in the estate, BF's compensation was contingent upon a recovery in the potential litigation, with the firm agreeing that it would not seek any payment of fees until all creditors were first paid in full. This Court granted the Trustee's application and authorized BF's retention, by Order dated May 19, 1997.

Although not disclosed in the retention application, BF simultaneously represented Alvin Sarter, the largest creditor of the Debtor and a partner of BF.[1] Prior to the bankruptcy, in early 1995, Sarter initiated a fraudulent inducement action against the Debtor and the Wongs,[2] who had been hired as the contractor for renovations on Sarter's residence. The complaint, which seeks damages of $1 million, asserts that the Wongs had represented themselves as licensed professionals who could complete the work on a strict timetable. Instead, according to Sarter, the renovations were completed by unsupervised and unskilled labor, and only after numerous delays and additional charges.

Soon after its retention, BF obtained an order, on June 10, 1997, for an examination of the Debtor and the Wongs pursuant to Fed.R.Bankr.P. 2004. The Wongs responded by moving to disqualify BF as Trustee's counsel or, alternatively, delay the examinations until completion of the state court litigation. The motion alleged that the Rule 2004 examinations were merely a disguised effort by BF to obtain information for use in Sarter's law suit after the state court had cut-off discovery. After pointing out that the affidavit submitted in support of BF's retention failed to disclose the existence of the Sarter litigation, the Wongs asserted that disqualification was warranted because the estate and Sarter were potentially in direct competition for claims against the Wongs. Moreover, the Debtor had possible counterclaims against Sarter, which became estate property upon the filing of the bankruptcy case. Hence, BF's simultaneous representation of the Trustee and Sarter resulted in a conflict of interest that required disqualification.

The motion was denied. This Court observed that, unlike the state court action which was grounded on an alleged fraudulent inducement occurring in the spring of 1994, the stated purpose for the Rule 2004 investigation was to uncover possible transfers of assets from the Debtor to other entities controlled by the Wongs, at or about the time Sarter obtained a $177,-000.00 arbitration award in October, 1995. The Wongs failed to provide any evidence controverting the *prima facie* rationale that the purpose and scope of the examination were limited and would not result in the discovery of any relevant information that could be used in the state court ac-

---

**1.** Sarter has since withdrawn from BF.

**2.** *Sarter v. Wong,* No. 1681/95 (February 1, 1995 Sup.Ct.N.Y.)

tion. In any event, Rule 2004 examinations, when initiated for a legitimate purpose, may proceed even in instances where there is the possibility that the resulting evidence could be used in collateral litigation.

The underlying facts similarly provided no basis to disqualify BF as special counsel for the Trustee. Sarter responded to the motion by agreeing that any proceeds realized in the state court litigation would be turned over to the estate to be divided *pro rata* among the unsecured creditors. Also, the Debtor's potential causes of action against Sarter appeared to be only a remote possibility. The Wongs did not allege that any counterclaims had been filed and provided no evidence that would indicate any likelihood such counterclaims could be viably asserted.

Thereafter, the Rule 2004 examinations were conducted and eventually led to the inception of the above-captioned adversary proceeding, which alleges fraudulent conveyance claims against the Wongs and related family-owned entities.

## II. THE INSTANT DISQUALIFICATION MOTION

Although not revealed to the Court, in reality the defendants in Sarter's state court action had previously asserted counterclaims. Upon verifying that fact, counsel for the Wongs and Project and Systems Technology, Inc. again seeks to disqualify BF as counsel for the Trustee.[3] They allege that BF now labors under an

actual conflict of interest manifested primarily by prejudicing the estate's rights under the Debtor's counterclaim, an asset of the estate.

In support of their motion, the Wongs claim that BF is conflicted because it cannot undertake its full responsibility as counsel to the Trustee, insofar as the firm will not prosecute the Debtor's counterclaim. The Wongs also submitted the affidavit of Leonard Sclafani, their attorney in the state court action, who claims that attorneys from BF, while representing Sarter in the state court action, informed the judge that as counsel to the Trustee, they were authorized and would dismiss the Debtor's counterclaims.

In addition, BF's dual representation has distorted settlement discussions, according to the Wongs, through a confusion of loyalties, rendering any negotiations futile. The Wongs claim that BF entered into settlement negotiations in the state court proceedings, and at one point, had agreed to a settlement in principle. The Wongs further maintain that BF backed out when it was revealed that the amount being discussed was for a global settlement of the state suit and the instant adversary proceeding, an amount that would not provide sums satisfactory to Sarter. The Wongs assert that hinging settlement of the Trustee's adversary proceeding upon the wishes of Sarter only serves to injure the estate by skewing the settlement numbers upward and increasing the expense of litigation.[4]

---

**3.** The remaining Co–Defendants in this adversary proceeding, Mary K.P. Wong, Yu Chung Shek, Promaster, Inc., and Crown Royal Development & Management, Inc., joined in the motion orally.

Seemingly as an afterthought, the issue of the Defendants' standing to object to the Trustee's employment of BF was first raised in BF's Proposed Findings of Fact and Conclusions of Law. BF asserts that the Defendants lack standing to complain about BF's retention, pursuant to the strictures of § 327(c), because none are listed as creditors in the Debtor's schedules. Disregarding the belated timing of the argument, the mere fact

that the Defendants do not appear as creditors on the Debtor's schedules is not dispositive. Because this is a no-asset case, creditors need not file a proof of claim. Hence, it remains unclear whether each Defendant is, or is not, a creditor of the estate. Furthermore, the Wongs assert that they are creditors to the extent that they hold subrogation claims for debts paid through personal guarantees to the Debtor. This assertion has not been refuted by BF. We therefore decline to decide the motion on the grounds of lack of standing.

**4.** In addition, the Wongs reinstituted their claim that BF has misused the Bankruptcy

BF argues that there is simply no conflict of interest that could possibly justify disqualification. The firm counters the Sclafani affidavit with its own affidavits obtained from William McSherry and Paul Straus, the two attorneys handling Sarter's state court litigation on behalf of BF, who state that there were never any attempts to dismiss the Debtor's counterclaims or any representations made to that effect; there were only attempts to sever the action as to the Debtor so that the state court action could proceed against the remaining defendants. Furthermore, they claim that settlement discussions never proceeded beyond the exploratory stage. The negotiations stopped when Sclafani informed them that he did not have authority to agree on a final figure. BF also questioned the Trustee at an evidentiary hearing conducted on this matter, wherein he testified that he had independently determined that the Debtor's counterclaims were meritless.

Maintaining that the issues presented in the instant motion to disqualify have already been litigated or should·have been argued in the Wongs' first attempt to disqualify the firm, BF argues that *res judicata* applies. Consequently, BF seeks sanctions against the Wongs, Project and Systems Technology, and their counsel for relitigating the disqualification issue.

## III. DISCUSSION

■ The general standard governing employment of counsel for the trustee is controlled by 11 U.S.C. § 327, which reads:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that

do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Moreover, the twin directives contained in subsection (a), that professionals be disinterested and devoid of adverse interests, are continuous requisites which must be maintained throughout an attorney's employment by a trustee. *See Rome v. Braunstein,* 19 F.3d 54, 62 (1st Cir.1994); *In re Granite Partners, L.P.,* 219 B.R. 22, 32 (Bankr.S.D.N.Y. 1998).

■ The disinterestedness requirement of § 327(a) is subject to two limited exceptions. The first occurs whenever a trustee seeks to employ a debtor's former counsel for a specified special purpose, by providing that:

> [t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

■ The second exception pertains to employment by a trustee of professionals representing creditors. It also delineates a less stringent standard than otherwise required by § 327(a):

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or

Code's discovery procedures to serve the state court litigation. That issue, however, has already been disposed of in the prior disqualification motion. As previously discussed, properly incepted discovery procedures within the context of a bankruptcy case are not improper, even if they lead to information that can

be used in collateral litigation. *See In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr. D.Mass.1985); *In re Mantolesky,* 14 B.R. 973, 979 (Bankr.D.Mass.1981) (citing *In re Manufacturers Trading Corp.,* 194 F.2d 948, 958 (6th Cir.1952) and *Marx v. Chase Nat'l Bank,* 117 F.2d 800 (2d Cir.1941)).

the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). This exception permits a trustee to employ as counsel non-disinterested persons, if the only reason for the lack of disinterestedness is the attorney's representation of a creditor. However, it "remains important to determine whether the person is disqualified on any other ground, e.g., an interest adverse to the estate." 3 *Collier on Bankruptcy,* ¶ 327.04[7][b], at 327–56 (Lawrence P. King ed., 15th ed. rev.1999).

In the present case, BF's employment, a creditor's attorney representing the Trustee as special counsel for a limited purpose, does not squarely fit within either exception. While § 327(e) contemplates employing counsel for a limited purpose, it makes reference only to a debtor's former attorney and does not mention attorneys who represent creditors. Similarly, even though § 327(c) encompasses employing a creditor's attorney as counsel for the trustee, it does not explicitly provide guidance for retaining such an attorney as special counsel.

Courts have filled this gap by utilizing the standard found in § 327(e), thereby permitting a creditor's law firm to simultaneously serve as special counsel to the trustee if it does not hold an adverse interest "with respect to the matter on which such attorney is to be employed." *See, e.g., Fondiller v. Robertson (In re Fondiller),* 15 B.R. 890, 892 (9th Cir. BAP 1981), *appeal dismissed,* 707 F.2d 441 (9th Cir. 1983); *Moore v. Kumer (In re Adam Furniture Indus., Inc.),* 191 B.R. 249, 259 (Bankr.S.D.Ga.1996); *Reigle v. Ogle (In re*

*Renninger Mason Contractors, Inc.),* 58 B.R. 516, 517–18 (Bankr.E.D.Pa.1986).

One of the first cases to explore this area was *In re Fondiller,* in which a creditor's law firm was allowed to simultaneously represent the trustee as special counsel to litigate a fraudulent conveyance action against other creditors with which the firm had no connection. The court reasoned that

> [t]he employment of trustee's special counsel who represents, or has represented, creditors is not covered by the Bankruptcy Reform Act. By contrast, § 327(e) of the Code specifically provides that, under certain circumstances, the attorney for the debtor may serve as special counsel for the trustee. It does not require as a condition of such employment that the attorney cease representing the debtor in the case. Less adversity of interest would normally be involved when the person sought to be appointed special counsel represents a creditor than when he or she represents the debtor. There is no reason why Congress should intend a more restrictive provision to apply to a creditor's attorney, keeping in mind that the primary reason for such restrictions is the avoidance of conflicts of interest. We therefore conclude that the omission to provide for the employment of trustee's special counsel, who also represents creditors in the case, was an oversight. That omission does not indicate an intention to impose the same restrictions on special counsel to the trustee as on general counsel.

*In re Fondiller,* 15 B.R. at 892.[5]

More recently, the issue was examined in *In re AroChem Corp.,* 181 B.R. 693

**5.** *In re Fondiller* was decided prior to the amendment of § 327(c) in 1984. At that time, the sub-section specifically prohibited a law firm's representation of a creditor while serving as trustee's counsel in the same bankruptcy case:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such

person's employment by or representation of a creditor, but may not, while employed by the trustee, represent in connection with the case, a creditor.

While observing that former § 327(c) would require an attorney to sever his relationship with creditor clients connected with the case if he were employed as general counsel to the trustee, the *In re Fondiller* court noted that

(Bankr.D.Conn.1995), *appeal dismissed,* 198 B.R. 425 (D.Conn.1996), *aff'd,* 176 F.3d 610 (2d Cir.1999). In that case, the Chapter 7 trustee sought retention of a law firm to act as special counsel in an action against various defendant creditors. Although the firm had previously represented another creditor in litigation against the creditor defendants, the bankruptcy court authorized the retention, pursuant to § 327(e), over the creditor defendants' objection. *See id.* at 699.

On appeal to the Second Circuit, the court decided that retention of a creditor's law firm as special counsel, representing the trustee for a limited purpose rather than serving as general counsel for the entire bankruptcy case, must be analyzed pursuant to § 327(a) and § 327(c), and not § 327(e). "By its terms, section 327(e) applies only where the attorney represented the debtor." *In re AroChem,* 176 F.3d at 622. However, the court concluded that

> in applying sections 327(a) and (c) we should reason by analogy to 327(e), so that "where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself."

*Id.* (quoting *Stoumbos v. Kilimnik,* 988 F.2d 949, 964 (9th Cir.1993)); *accord In re Pappas,* 216 B.R. 87, 92 (Bankr.D.Conn. 1997); *In re Statewide Pools, Inc.,* 79 B.R. 312, 314 (Bankr.S.D.Ohio 1987); *Altenberg v. Schiffer (In re Sally Shops, Inc.),* 50 B.R. 264, 266 (Bankr.E.D.Pa.1985). Echoing the rationale first espoused in *In re Fondiller,* the court explained that it " 'interpret[ed] that part of § 327(a) which reads that attorneys for the trustee may "not hold or represent an interest adverse to the estate" to mean that the attorney must not represent an adverse interest relating to the services which are to be

the statute did not apply where the attorney represented the trustee in a special limited capacity that presented no conflicting interest between the trustee and the creditor clients of the attorney. *See* 15 B.R. at 892.

performed by that attorney.' " *In re AroChem,* 176 F.3d at 622 (quoting *In re Fondiller,* 15 B.R. at 892).

■ Thus, if a creditor's attorney employed as special counsel does not otherwise hold or represent interests adverse to the estate, where there is an identity of interest between the creditor and the estate *"with respect to the matter for which special counsel is retained,* there is no conflict and the representation can stand." *Id.* (emphasis in original) (citing *In re National Trade Corp.,* 28 B.R. 872, 875 (Bankr.N.D.Ill.1983) and *National Westminster Bank USA v. Yaeger (In re RPC Corp.),* 114 B.R. 116 (M.D.N.C.1990)); *see also In re Milford Group, Inc.,* 164 B.R. 899, 902 (Bankr.M.D.Pa.1993) (upholding retention where interests of the estate and creditor's attorney seeking employment as special counsel were "parallel"); *In re Iorizzo,* 35 B.R. 465, 468 (Bankr.E.D.N.Y. 1983) ("Although [counsel] represents estates which may have interests adverse to each other, the interests that [counsel] represent as special counsel to the Trustee, are the interests the estates share in common to investigate and recover concealed assets.").

■ According to the Wongs, BF's simultaneous representation of Sarter in the state court litigation and the Trustee in this bankruptcy case necessarily prejudices the estate's interest in the Debtor's counterclaim. However, applying the Second Circuit's rationale found in *In re Aro-Chem,* it becomes readily apparent that there is no conflict necessarily inherent in BF's simultaneous representation of the Trustee and Sarter. BF and Sarter have effectively subordinated their individual claims to any potential monies recovered from the Wongs, whether in the state law suit or via BF's representation of the Trustee in this bankruptcy case. In addi-

Of course, § 327(c) no longer contains a *per se* bar to such dual representations; disqualification of general counsel for the trustee under § 327(c) now requires the presence of an actual conflict of interest.

tion, and perhaps more importantly, BF was employed by the Trustee for the narrow purpose of litigating adversary proceedings against the Wongs and related family-owned entities. Although BF represents the Trustee and Sarter, both clients hold the parallel interest of maximizing the estate through a recovery in the fraudulent conveyance actions.

Sclafani's revelation, that BF's state court attorneys claimed they would dismiss the Debtor's counterclaims, if true, would indeed be troubling. However, we do not place much faith in its veracity. First, there is nothing in the state court record supportive of Sclafani's statements. And, BF's rendition is much more consistent with the entire record. By letter addressed to Sclafani and dated October 1, 1997. McSherry indicated that BF would seek dismissal of *Sarter's* cause of action against the Debtor not vice versa. Clearly, BF ultimately decided to pursue severance of the Debtor from the state court litigation, rather than dismissal, because of the presence of the Debtor's counterclaims.

Moreover, after conducting an investigation, the Trustee was convinced that the counterclaims lacked merit. Although the Wongs charge that the Trustee's decision was improperly influenced by BF, the Wongs have provided nothing that would persuade this Court to quibble with the Trustee's determination or to question his independence. The testimony offered by the Trustee in support of his assessment of the counterclaims was uncontroverted, and the overall record demonstrates that his judgment was likely correct. The Trustee neither instituted the counterclaim, nor did he at any time seek to employ counsel to pursue that claim. In addition, even though the counterclaims seek $19 million more in damages than Sarter's claim, the defendants in the state court action were apparently prepared to extend a monetary offer of settlement to Sarter. From this, we can only conclude that the counterclaims are at best of negligible value.

Arguing that BF should prosecute the Debtor's counterclaim, but will not because of its simultaneous representation of Sarter, simply underscores the fact that the Wongs have mistaken the exact nature of BF's employment by the Trustee. That retention is limited to prosecuting possible fraudulent conveyances in this bankruptcy case. Disqualification would be warranted if BF represented an adverse interest with respect to the matters it was hired to perform. We are unable to discern any. Apparently neither can the Wongs. They have failed to identify how the estate and Sarter's interests might differ in the instant adversary proceeding. Instead, the Wongs intimate that the state court counterclaims will be lost due to BF's refusal to pursue those causes of action. The short answer to this contention is that BF's limited retention precludes it from representing the Trustee in the state court action. Furthermore, the limited retention of BF is in no way prejudicial to the estate. The reason that the Trustee has declined to prosecute the counterclaims is not because of an inability to do so. He has merely determined that the counterclaims are of little or no worth to the estate.

The Wongs also allege that BF labors under a confusion of loyalties which distorts settlement negotiations. This argument is similarly unconvincing. The Wongs assert that the proposed settlement of the state court action was refused by Sarter after discovering that it was meant to encompass not only the state court litigation, but the instant adversary proceeding as well. Even accepting the Wongs' allegations as true, Sarter's refusal was most likely based on a desire to maximize his recovery in the bankruptcy case. However, we are unaware of any authority, nor have the Wongs cited any, which would support the contention that refusing a proposed settlement offer as too low could somehow subject counsel to disqualification.

In *In re Renninger Mason Contractors, Inc.,* 58 B.R. at 516, a court was confront-

ed with a disqualification motion that contained a comparable argument:

> "Defendant contends that the Trustee in this case does not possess that detached, independent, disinterested advice his counsel should be giving him when it comes to determining whether to attempt to recover an allegedly preferential payment because the Trustee's counsel would obviously be out to get all the money he can to maximize the recovery for his other client, the American Bank. . . ."
>
> . . . The defendant's above-quoted argument actually boils down to the contention that [special counsel] might be too aggressive in its representation of the trustee because of its desire to maximize the recovery of the Bank.

*Id.* at 518 (citation omitted).

Understandably, the Wongs may be disturbed that the two actions cannot be settled globally for some lesser amount. However, such disappointment cannot be invoked as a basis to disqualify BF from serving as the Trustee's special counsel. The interests of the estate and Sarter within the context of the instant adversary proceeding are identical—both will benefit from efforts to seek the maximum recovery of funds. The Wongs' frustration with the unsuccessful settlement negotiations in the state court action just do not constitute grounds for disqualification of BF.

■ Finally, the Wongs seek to disqualify BF because of the firm's initial failure to disclose facts that might implicate a conflict of interest, foremost of which is the existence of the Debtor's counterclaims against Sarter. Although the lax attitude taken by BF in providing complete and timely disclosure is unsettling, we reject the notion offered by the Wongs that such an omission necessarily calls for the disqualification of BF as the Trustee's special counsel.

■ Courts have broad discretion in determining whether non-disclosure merits a law firm's disqualification. *See In re*

*Adam Furniture Indus., Inc.,* 191 B.R. at 260; *see also Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.),* 75 B.R. 250, 253 (9th Cir. BAP 1987) (holding that a decision by a court for which the statute was intended to aid, which found no actual need to take remedial measures, will be upheld absent an abuse of discretion). One tribunal observed that whereas " '[c]omplete disclosure is for the court's benefit so that it can scrutinize any adverse interests of the attorney,' the court may excuse an attorney's initial failure to disclose." *In re Pappas,* 216 B.R. at 93 (alteration in original) (quoting *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R. 52, 54 (9th Cir. BAP 1994)).

BF's bankruptcy counsel advises that he did not regularly consult with the firm's attorneys who are prosecuting Sarter's state court litigation. He was therefore unaware that any counterclaims were filed. We will refrain from commenting on bankruptcy counsel's responsibility to fully explore and disclose the precise nature of his firm's representation of Sarter in the state court action. Suffice it to say that the undisclosed facts do not evidence any actual conflict of interest and do not render BF unfit to serve as Trustee's special counsel. *See In re Adam Furniture Indus., Inc.,* 191 B.R. at 260; *cf. In re Servico, Inc.,* 149 B.R. 1009, 1013 (Bankr.S.D.Fla.1993) (ruling that creditor's counsel, while seeking appointment as special counsel for trustee, was not required to disclose potential preference action against creditor). Although the omitted facts should have been presented to the Court, that deficiency has largely proved harmless and does not warrant the purging remedy of disqualification.

## IV. CONCLUSION

■ We are cognizant of the guidance provided by the Second Circuit, which generally disfavors disqualification as a drastic measure that should be avoided unless absolutely necessary. *See, e.g., Government*

*of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978). In fact, motions to disqualify are frequently viewed with a certain amount of skepticism, as they can be utilized for solely tactical reasons.

BF"s motion for sanctions suggests that the instant disqualification motion was the product not of any desire to protect the integrity of the bankruptcy process, but was an improper second bite that sought to eliminate or suspend adverse litigation. According to BF, the issues contained in this motion were either completely litigated or should have been raised in the Wongs' previous motion to disqualify. We disagree. Disqualification, by its very nature, is a matter of ethical, not legal, considerations. As such, newly discovered facts bearing on possible conflicts should not be barred from a court's consideration by the legal principle of *res judicata.*

We are not prepared to label the Wongs' motion as the product of any untoward motivation that merits the imposition of sanctions. It forwarded new and unfamiliar information to the Court. Although we do not find the mere existence of the Debtor's counterclaims and the allegations presented by the Sclafani affidavit as dispositive, they arguably border on a showing of an impermissible conflict. Notwithstanding our dismay with the level of forthrightness exhibited by BF concerning full disclosure of the parameters of the state court litigation, in the present factual context, disqualification on that basis alone is unduly harsh.

Accordingly, for all of the above-stated reasons, the Wongs' motion to disqualify is denied. BF"s motion to impose sanctions is likewise denied.